UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Geneise Israel<br>Plaintiff,<br><br>vs.<br><br>Beth Israel Deaconess Medical Center,<br>Michelle Proulx, Sara Montanari, Eileen<br>Joyce and Raina Gaurishankar<br>Defendants. | Civil Action<br>No._____ |

*FILED IN CLERKS OFFICE 2020 FEB 19 AM 9: 20 U.S. DISTRICT COURT DISTRICT OF MASS.*

## VERIFIED CIVIL ACTION COMPLAINT

I.  **Introduction:**

The Plaintiff files this civil action against the Defendants for the work place racial discrimination, harassment, and retaliation, along with threat, intimidation and coercion in violation of M.G.L. c. 12, Sec. 11H and further in violation of M.G.L. c. 151B, Sec. 4, Title VII, of the Civil Rights Act of 1964, 42 U.S.C. Secs. 1981, 1983 and 2000e *et seq.*, and the First and Fourteenth Amendment of U.S. Const. The Plaintiff seeks compensatory damages against the Defendants in their collective, individual and official capacities, as well as, injunctive relief.

II. **Jurisdiction:**

This Court has jurisdiction of the action under 28 U.S.C. Sec. 1345 and 42 U.S.C. Secs 1981, 1983 and 2000e *et seq.*

III. **Parties:**

1.  The Plaintiff, Geneise Israel (hereinafter "Israel"), currently resides at 15 Walnut Street, Stoughton, MA 02072. Israel at all times relevant to this complaint was employed at Beth Israel Deaconess Medical Center in Boston.
2.  The Defendant, Beth Israel Deaconess Medical Center (hereinafter "BIDMC"), is a charitable corporation that operates a academic medical center. BIDMC's abode is 330 Brookline Avenue, Boston, MA 02215. BIDMC is being sued in its official capacity.
3.  The Defendant, Michelle Proulx (hereinafter "Proulx"), at all times relevant to this complaint was employed by BIDMC. Proulx's abode is the same as BIDMC. Proulx is being sued in both her individual and official capacities.
4.  The Defendant, Sara Montanari (hereinafter "Montanari"), at all times relevant to this complaint was employed by BIDMC. Montanari's abode is the same as BIDMC. Montanari is being sued in both her individual and official capacities.
5.  The Defendant, Eileen Joyce (hereinafter "Joyce"), at all times relevant to this complaint was employed by BIDMC. Joyce's abode is the same as BIDMC. Joyce is being sued in both her individual and official capacities.
6.  The Defendant, Raina Gaurishankar (hereinafter "Gaurishankar"), at all times relevant to this complaint was employed by BIDMC. Gaurishankar's abode is the same as BIDMC. Gaurishankar is being sued in both her individual and official capacities.
7.  At all times relevant to this complaint the Defendants were acting under the color of law.

IV. **Statement of Facts:**

8.  In 2016, Israel, an African American woman was employed at Beth Israel Deaconess Medical Center.
9.  In or about November 2016, Israel left her full-time position in Critical Care Unit "CCU" as Unit Coordinator at BIDMC for a promotion to Patient Service Representative in the Gastroenterology department at BIDMC.
10. At the time of Israel's departure from her position in "CCU" her manager and co-workers

expressed to Israel that they were disappointed to lose such a valued and valuable employee.

11. Israel never had any discrimination issues in her entire time as a full-time or per diem Unit Coordinator at BIDMC from management or patients.

12. Proulx was Israel's supervisor in her position as a Patient Service Representative in the Gastroenterology department at BIDMC.

13. Israel was also employed by BIDMC in a per diem capacity in another department.

14. Israel has never experienced any discrimination in her per diem capacity outside of the Gastroenterology department.

15. Almost immediately after Israel was hired, Israel began to experience hostility from Proulx, Israel's supervisor, which Israel believe was related to Israel's race as an African American.

16. Proulx arranged the office so that Israel's work area was boxed in by another white eimployee's work space and cluttered to the point where it became a fire hazard and Israel was unable to move.

17. Proulx told Israel to deal with the situation myself, as a means of intimidation.

18. Additionally, Proulx's continuous and repeatedly failed to provide Israel with necessary training, despite Israel's repeated requests.

19. Instead of giving Israel the material needed to do her job effectively, Proulx made Israel rely totally on co-workers to get jobs and work done.

20. Proulx would then try to turn these same co-workers against Israel so they would not help Israel, and again Israel was not able to get her jobs done.

21. For example, rules and processes needed to do Israel's work would be buried in one co-worker's email from seven years ago and instead of having this rule readily accessible to Israel, Israel would have to find the co-worker with the email to print out the rule so Israel could learn and access it as needed.

22. On or about December 5, 2016, Proulx referred to Israel and a fellow co-worker as "cotton-pickers" and Israel being out of her "cotton-picking mind", while making copies of work related documents.

23. Proulx's racial and derogatory statements were offensive to Israel and made Israel exremely uncomfortable in the office, given the derogatory term "cotton-picker" was used to describe African American people in the 1990's.

24. On December 5, 2016, Israel engaged in protected conduct and reported the incident to Proulx's supervisor, Montanari and Joyce, the head of the entire Gastroenterology department, requesting a meeting with them to discuss the hostile and discriminatory work environment to which

Israel had been subjected to.

25. In this two part meeting, Proulx admitted to making the racially charged statements and was unapologetic.

26. Israel told Montanari and Joyce that she was highly offended and was uncomfortable with Proulx's racially derogatory statements.

27. Following this meeting Israel again engaged in protected conduct and reported the incident to Gaurishankar in Human Resources in a timely manner alleging that Israel had been discriminated against during her employment on the basis of race, as it appeared neither Montanari or Joyce was going to take any action against Proulx.

28. Based on Proulx's admission to the derogatory and racially insensitive statments, Gaurishankar was required to find reasonable cause the racial discrimination was true pursuant to 42 U.S.C. Sec. 2000e-5.

29. Neither Gaurishankar, Montanari or Joyce did anything to sternly admonish, reprimand, suspend, or at worst fire Proulx for her admittedly racial derogatory statements against Israel, in essence condoning and minimizing Proulx's actions which were both objectively and subjectively offensive in the work place.

30. Gaurishankar, Montanari and Joyce knew or reasonably should have known that Proulx's racially derogatory statements were not appropriate in the BIDMC work place and they did nothing to effectively sanction, discipline or otherwise affect the terms and conditions of Proulx's employment.

31. After Israel reported the incident to Montanari, Joyce and Gaurishankar, Proulx took adverse and retaliatory actions against Israel to maintain an uncomfortable and hostile work environment against Israel, amounting to threats, intimidation and or coercion, on a regular basis.

32. Proulx's action were a continuous pattern of retaliatory acts for Israel reporting Proulx to Human Resources and the other defendants, which negatively impacted Israel's work.

33. Thereafter, Human Resources required that Proulx address the issue of the clutter around Israel's desk by removing it.

34. However, along with the clutter Proulx decided to remove the office microwave and refridgerator, even though the items had nothing to do with the clutter around Israel's work space.

35. Proulx effectively intimidated Israel by making it a point to let the other office employees know that it was Israel's fault these prized items were removed causing hostility between Israel and Israel's co-workers on whom Israel relied on for information needed to do her job effectively.

36. Proulx would continuously and intentionally give Israel incorrect information, in an effort to make Israel's job performance appear sub-par and less efficacious.

37. Proulx also continuously made references about Israel being offended by benign comments she made in the office.

38. On different occasions Proulx would greet the white office employees with a "Good Morning" and then say "What's Up Homies" to the African Americans, including Israel, making Israel feel uncomfortable in the work place.

39. This practice was an explicit allusion to Israel's complaints to Montanari about being called a "cotton-picker" and out her "cotton-picking mind", by Proulx who made the situation a joke within the unit.

40. For example, in a meeting Proulx might say "The sky is blue" then turns to Israel and say "Geneise, are you offended?" Trying to make it seem as if Israel was offended by mundane things instead of taking responsibility for Proulx's racially insensitive and offensive language in the work place.

41. Also, making the hostility obvious and more intense.

42. Proulx's continuous overt racist actions caused Israel significant anxiety, extreme emotional distress and depression, even bringing Israel to tears on multiple occasions.

43. As a direct result of Proulx's conduct Israel gained 60 pounds and became extremely depressed.

44. Due to not having insurance Israel had to go an unconventional route for Israel's therapy and find a therapist that allowed Israel to make inconsistent payments.

45. Due to Gaurishankar, Montanari and Joyce's failure to proactively and effectively thwart Proulx's continuous work place harassment and discrimination, by way of firing, disciplining or otherwise affecting the terms and conditions of Proulx's employments, they in essence condoned Proulx's racially derogatory misconduct, as they too were not offended by such conduct because they too were not African American.

46. Israel did inquiry of Gaurishankar as to what actions, if any were taken against Proulx as she continued to intensify her work place discrimination and Gaurishankar said she could not tell Israel.

47. On or about February 15, 2017, as a direct result of all Proulx's continuous actions and not any one isolated act, Proulx made Israel's working conditions do difficult and unpleasant, that Israel was forced to resign from Israel's position in the Gastoenterology department, further amounting to a constructive discharge.

48. As a result of Israel's resignation, Israel lost her health insurance, incurred significant mental

health bills, and was forced to take $14,000.00 out of her retirement account.

49. Israel had been re-hired at BIDMC for a part-time position at a lower pay grade.

50. Then, Israel had two jobs at BIDMC.

51. Israel had to pay triple the amount for insurance while making 1/3 of the money working in this part-time position.

52. Israel was a dedicated and loyal employee throughout her employment in the Gastroenterology department at BIDMC prior to Israel's resignation and constructive discharge, and Israel continued to be a dedicated and loyal employee in her per diem position at BIDMC.

53. Throughout Israel's employment in the Gastroenterology department Israel was subjected to continuous racial discrimination from Proulx on a continual basis, which created a hostile and tense work environment.

54. During Israel's employment in Gastroenterology department, Proulx's position was that of Israel's direct supervisor/manager and at all times she exercised dominion and control over Israel in the work place.

55. Proulx made racially insensitive comments to Israel's and thereafter treated those comments as a joke within the Gastroenterology department, which Israel felt was objectively and subjectively inappropriate and highly offensive in the work place.

56. Immediately after Israel reported Proulx to Human Resources for making derogatory comments, Proulx initiated a course of retaliatory conduct against Israel that resulted in Israel's resignation and constructive discharge from the position under Proulx's supervision.

57. Israel was subjected to the work place harassment because of Israel's race as an African American due to Proulx's overt racism.

58. But for Proulx's actions, Israel would not have been transferred or constructively discharged and Israel would have intended to stay employed in the Gastroenterology department indefinitely.

59. In addition to the economic loss, Israel has been professionally humiliated by Israel's resignation and Israel has experienced, and would have continued to experience significant emotional distress as a result of Proulx's actions.

60. Prior to Israel resignation, Israel relied on the $1,000.00 per week salary in the Gastroenterology department.

61. But for Israel's forced resignation, Israel would have remained at BIDMC in the Gastroenterology department indefinitely.

62. Israel's resignation from Gastroenterology department related to Proulx's actions were a result of retaliation for Israel reporting Proulx's racist comments to Israel's supervisor and Human Resources failure to take actions against Proulx.

63. Israel's resignation was directly related to Proulx's racial discrimination due to Israel's African American heritage and the other Defendants' failure to take stern proactive actions against Proulx racist conduct in the work place.

## V.  Claims for Relief:

64. Defendant BIDMC is a charitable corporation operating in Massachusetts under State Law and did violate, M.G.L. c. 151B, Sec. 4, Title VII, 42 U.S.C. Secs. 1981, 1983 and 2000e *et seq.*, by not taking corrective actions to thwart Proulx's racial, discriminatory and retaliatory statements and conduct in the work place, that caused a hostile work environment, further causing Israel mental and emotional distress.

65. Defendant Proulx was the supervisor of Israel at BIDMC and did violate M.G.L. c. 12, sec. 11H and 151B, Sec. 4, Title VII, 42 U.S.C. Secs. 1981, 1983 and 2000e *et seq.*, by threats, intimidation and coercion, as well as repeatedly making racial and derogatory statements to Israel in the work place that caused a hostile work environment, further causing Israel mental and emotional distress.

66. Defendant Montanari was the supervisor of Proulx at BIDMC and did violate M.G.L. c. 151B, Sec. 4, Title VII, 42 U.S.C. Secs. 1981, 1983 and 2000e *et seq.*, by failing to take stern corrective action against Proulx's retaliatory acts and admittedly racial and derogatory statements and conduct in the work place that caused a hostile work environment, further causing Israel mental and emotional distress.

67. Defendant Joyce was the Head of the Gastroenterology department and did violate M.G.L. c. 151B, Sec. 4, Title VII, 42 U.S.C. Secs. 1981, 1983 and 2000e *et seq.*, by failing to take stern corrective action against Montanari and Proulx for Proulx's retaliatory acts and racial statements, which were objectively and subjectively derogatory and offensive in the work place that caused a hostile work environment, further causing Israel mental and emotional distress.

68. Defendant Gaurishankar was the Human Resource person at BIDMC and did violate M.G.L. c. 151B, Sec. 4, Title VII, 42 U.S.C. Secs. 1981, 1983 and 2000e *et seq.*, by failing to take stern corrective action against Joyce, Montanari and Proulx for Proulx's retaliatory acts and racial statements, which

were objectively and subjectively derogatory and offensive in the work place that caused a hostile work environment, further causing Israel mental and emotional distress.

69.     Defendants are persons within the meaning of 42 U.S.C. Secs. 1983 and 2000e(a), and employers within the 42 U.S.C. Sec. 2000e(b), and acting under the color of State Laws when Israel's constitutional and civil rights were violated.

## VI. Prayers for Relief:

Wherefore, the Plaintiff request this Court to decide:

A.     Defendants Proulx, BIDMC, Montanari, Joyce and Gaurishankar's discrimination against Israel was in violation of 42 U.S.C. Sec. 2000e-2(a), 3(a), occurred, amoung other ways by:

    1.     Subjecting Israel to hostile and abusive work environment forcing her to quit employment with BIDMC;

    2.     Subjecting Israel to departmental transfers in retaliation for complaining about the hostile and abusive work environment at BIDMC, believed to be discrimination in employment on the basis of race; and

    3.     Failing or refusing to take appropriate and stern action to remedy the effects of the discriminatory treatment of Israel.

B.     Defendant Proulx discrimination against Israel while at BIDMC from 2016 until 2017, in violation of Title VII, on the basis of her race as an African American, in violation of M.G.L. c. 151B, sec. 4, by among other things:

    1.     Subjecting Israel to relocation within BIDMC;

    2.     Repeated racially insensitive and derogatory statements and harassment; and

    3.     Subjecting Israel to discriminatory intimidation, ridicule and insults that severly and pervasively altered the working conditions at BIDMC.

C.     Defendant Proulx violated Israel's constitutional and civil rights under 42 U.S.C. Sec. 1983, Title VII, by creating an abusive working environment, by retaliating against Israel for complaining under the First and Fourteenth Amendments of being discriminated against due to being an African American and taking offense to Proulx's admittedly racially insensitive statements.

D.     Defendant Proulx did interfer, as well as attempted to interfer with Israel's constitutional rights

by way of threats, intimidation or coercion, in violation of G.L. c. 12, Sec. 11H, by amount other things:

    1. Rearranging Israel's work space to cause a fire hazard and an unworkable space;

    2. Refusing to provide trainings Israel requested to do her job and work effectively;

    3. Removing the office microwave and refridgerator; and

    4. Referencing other mundane affects as the sky being blue and inquiring whether Israel was offended in the middle of meetings was done to intimidate Israel.

E. Defendant Proulx's conduct made Israel's working conditions to difficult and unpleasant that Israel felt compelled to resign.

F. Award compensatory damages to Israel to fully compensate her for the damages she sustained while at BIDMC, collectively and individually against the Defendants as follows:

    1. $100,000.00 (One Million Dollars), against BIDMC, Proulx, Montanari, Joyce and Gaurishankar collectively;

    2. $500,000.00 (Five Hundred Thousand Dollars), against Proulx individually;

    3. $250,000.00 (Two Hundred and Fifty Thousand Dollars), against Montanari, Joyce and Gaurishankar individually.

G. Award back pay compensatory damages at $1,000.00 weekly to the present day for the full-time position at BIDMC.

H. Award back pay compensatory damages at $1,000.00 weekly to the present day for the per diem position at BIDMC.

I. Award the compendatory damages of $14,000.00 to Israel for taken taken funds from her retirement account.

J. Award punitive and treble damages accordingly against any and all Defendants as the Court finds liable, even in the event of a nominal damage amount.

K. Issue injunctive relief against BIDMC to make policies that require BIDMC Human Resources to effectively thwart racism and discrimination against any walk of life, in the work place.

L. Award Israel the cost associated with said litigation.

M. Grant any other compensatory, equitable and injunctive forms of relief that the Court may require.

**VII.**   **Jury Demand:**

The Plaintiff demands a trial by jury of all issues triable by jury under Rule 38 of the Federal Rules of Civil Procedure and 42 U.S.C. Sec. 1981a.

Respectfully submitted,

/S/ /l

Geneis Israel, *pro se*
15 Walnut Street
Stoughton, MA 02072

Dated: 13 FEB 20

## VERIFICATION OF FACTS

I, Geneisè Israel, hereby verify that the aforementioned facts are true and accurate to the best of my personal knowledge and further sworn to under the pains and penalties of perjury on this 13 day of February, 2020.

/S/ /l

Gèneise Israel, *pro se*